NOT FOR PUBLICATION (Doc. Nos. 15, 17, 20)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| JOSEPH A. MCPEAK, individually and on behalf of all similarly situated individuals, | : : : : | |
| Plaintiff, | : : | Civil No. 12-00348 (RBK/KMW) |
| v. | : : : | **OPINION** |
| S-L DISTRIBUTION COMPANY, INC. Defendant. | : : : | |

**KUGLER**, United States District Judge:

This matter comes before the Court on the motion by S-L Distribution Company ("S-L") to dismiss the Amended Class Action Complaint of Joseph A. McPeak ("Plaintiff"). S-L moves to dismiss Plaintiff's Amended Complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12. Plaintiff filed his Amended Class Action Complaint, alleging that his distribution agreement with S-L constituted a franchise under the meaning of the New Jersey Franchise Practices Act ("NJFPA") and that S-L violated the statute when it unilaterally terminated the contract. S-L contends that not only has Plaintiff failed to plead facts supporting that he had a franchise, but that Plaintiff also lacks standing to pursue his claims since he sold his distribution route. Although Plaintiff has standing to pursue claims for monetary relief, he failed to plead facts

1

sufficient to establish that S-L granted a license, as required by the NJFPA. Accordingly, S-L's motion to dismiss is **GRANTED**.

I.   BACKGROUND

On October 27, 2006, Plaintiff contracted with S-L (formerly known as SOH Distribution Company, Inc.) to obtain the exclusive right to sell and distribute certain products in a specified geographic region in Southern New Jersey. See Amend. Compl. ¶¶1, 22. The contract, entitled "Distributor Agreement," classified Plaintiff as an independent contractor and explicitly stated that "nothing herein shall be construed: (i) to be inconsistent with that relationship; (ii) as constituting Distributor as the franchisee, partner, agent, or employee of SOH." Pl. Amend. Compl., Ex. B at 2. The contract further contained a provision that Plaintiff, the distributor, "understands and acknowledges that this Agreement is not a franchise agreement. This Agreement does not provide the Distributor with a franchise to distribute Authorized Products under a marketing plan or system prescribed by SOH." Id. at 16. The contract also prohibited Plaintiff from conducting "his business under SOH's name, or the trademarks or tradenames of any of the Authorized Products or Other Products." Id. at 12. Under the contract's terms, Plaintiff could not use S-L's "name, or the trademarks or tradenames of any of the Authorized Products or Other Products for any reason, whatsoever, except upon receiving SOH's prior written consent." Id.

The contract required Plaintiff to, among other things, "use his best efforts" to sell certain products to authorized outlets and retail centers within the designated territory, comply with the standard operating guidelines, develop new accounts and additional shelf space for the respective products, and to "establish and to maintain the established, [*sic*] reputation and good will of the Authorized Products." Id. at 4. The contract also reserved S-L's right to authorize other persons

from time to time to act as SOH's wholesaler in an area that included Plaintiff's territory.  Id. at 6.

For several years, Plaintiff invested capital, labor, and "specialized skills" into his business, leading to an approximate twenty-five percent increase in sales and a two hundred percent increase in the "market value" of his distributorship.  Pl. Opp'n. at 6.  Unfortunately, in November 2011, Plaintiff received notice that S-L was terminating the distributor agreement.  Id. at 5.  Plaintiff alleges that after news spread of S-L's termination of the distributor agreements, his business became "worthless" because "[n]o prospective purchaser would agree to purchase a business that would essentially disappear within days."  Pl. Amend. Compl. ¶¶ 51-54.  On January 3, 2012, S-L allegedly modified Plaintiff's "exclusive right to sell territory by reducing its size," leading to an almost fifty percent reduction in Plaintiff's sales volume.  Id. at ¶56. Plaintiff and S-L executed a revised contract that required Plaintiff to use only advertising supplied or approved by S-L.  Pl. Amend. Compl., Ex. C at 14.  The provisions prohibiting Plaintiff's use of S-L's trademarks and explicitly repudiating that Plaintiff was a franchisee were also contained in the new agreement.  See Id. at 3, 14, 21.

On January 19, 2012, Plaintiff filed the instant lawsuit against S-L, asserting a claim on behalf of himself and other allegedly similarly situated individuals for declaratory, injunctive, and monetary relief.  Pl. Opp'n at 12; Pl. Amend. Compl. ¶10.  In his Amended Class Action Complaint, Plaintiff alleges that S-L illegally terminated his franchise in violation of the NJFPA. Pl. Amend. Compl. ¶¶ 66-88.  On March 8, 2012, Plaintiff sold his distributorship back to S-L. Pl. Opp'n at 12.

S-L raises several arguments in support of their motion to dismiss Plaintiff's Amended Class Action Complaint, including that Plaintiff lacks standing due to the sale of the "route" and

that Plaintiff has not pled facts sufficient to support that he is entitled to coverage of the NJFPA. See Def.'s Br. Supp. Mot. Dismiss at 2.  In response, Plaintiff contends that he has standing as he only sold his "franchise" to mitigate his damages and that dismissal would be premature given the fact-intensive inquiry required by NJFPA claims.  Pl. Opp'n at 13, 15.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).  In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

To make this determination, a court conducts a three-part analysis.  Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).  First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Id. (quoting Iqbal, 556 U.S. at 675).  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Id. at 131 (quoting Iqbal, 556 U.S. at 680).  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."  Id. (quoting Iqbal, 556 U.S. at 680).  This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 679.

A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible.  Id.

### III. DISCUSSION

As a preliminary matter, Defendant asserts that Plaintiff has no standing to pursue the NJFPA claim because Plaintiff "sold his interest in the Route, and correspondingly no longer being able to distribute under the Distributor Agreement. . . has suffered no injury in fact."  Def. Br. Supp. Mot. Dismiss at 13.  The Third Circuit has explained that, for a plaintiff to have standing pursuant to Article III of the United States Constitution, the following three requirements must be met:

> (1) the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 484-85 (3d Cir. 1998) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).  "The party invoking federal jurisdiction bears the burden of establishing these elements" and each element "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof."  Lujan, 504 U.S. at 561.  The Supreme Court has clarified that at the pleading stage general factual allegations of injury resulting from the defendant's conduct may be sufficient, "for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'"  Id. quoting Lujan v. National Wildlife Federation, 497 U.S. 871, 883-889 (1990).

5

Plaintiff has properly alleged that he suffered an injury in fact, that S-L's conduct caused his injury, and that his injury would be redressed by recovery of the difference in value between the "fair market value" of his distributorship and the price he actually received for S-L's repurchase of the terminated agreement. See Pl. Opp'n at 13. Since Plaintiff no longer has an interest in the agreement, however, his injuries could not be redressed by a favorable decision in terms of injunctive or declaratory relief. See Lujan v. Defenders, 504 U.S. at 555. As such, Plaintiff has standing to pursue his claim, but may only seek monetary relief.

Turning now to the actual substance of Plaintiff's claim, Plaintiff has failed to plead a factual basis for his claim that he owned a franchise within the meaning of the NJFPA. The NJFPA was enacted to protect franchisees from "unreasonable termination by franchisors that may result from a disparity of bargaining power between national and regional franchisors and small franchisees." N.J.S.A. §56:10-2 (2010). In 2010, the NJFPA was amended to extend its protections not only to "retail businesses, but also wholesale distribution franchisees that, through their efforts, enhance the reputation and goodwill of franchisors in this State." Id. In amending the act, the state legislature noted that "courts have in some cases more narrowly construed the Franchise Practices Act than was intended by the Legislature." Id.

For the purposes of the NJFPA, a franchise is defined as a "written arrangement for a definite or indefinite period, in which a person grants to another person a license to use a trade name, trade mark, service mark, or related characteristics, and in which there is a community of interest in the marketing of goods or services at wholesale, retail, by lease, agreement, or otherwise." Id. at 10-3. Neither party disputes that the first statutory element requiring a written arrangement is satisfied. Thus, in order to establish that he is entitled to the statute's protections, Plaintiff must plead facts sufficient to support a finding that S-L granted him a license to use

their trade name and that there was a community of interest.  See Id.  As Plaintiff has not satisfied the first element, his Amended Class Action complaint must be dismissed.

The New Jersey Supreme Court has declared that "not every grant of permission to use a trademark in the sale of goods or services is a 'license' within the meaning of the Franchise Act." Instructional Systems, Inc. v. Computer Curriculum Corp., 130 N.J. 324, 352 (1992).  Instead, the "hallmark of the franchise relationship is the use of another's trade name in such a manner as to create a reasonable belief on the part of the consuming public that there is a connection between the trade name licensor and licensee by which the licensor vouches, as it were, for the activity of the licensee in respect of the subject of the trade name." Neptune T.V. & Appliance Serv., Inc. v. Litton Sys., Inc., 190 N.J. Super 153, 160 (App. Div. 1983).  As such, the license "contemplated by the Act is one in which the franchisee wraps himself with the trade name of the franchisor and relies on the franchisor's goodwill to induce the public to buy." Liberty Sales Associates, Inc. v. Dow Corning Corp., 816 F.Supp. 1004, 1010 (D.N.J. 1993).

Plaintiff argues that he has pled facts that could plausibly be interpreted to deem his arrangement with S-L a license arrangement.  Plaintiff alleges the following facts in his Amended Class Action Complaint, upon which he appears to rely for this requirement:

1. "The Agreement grants the franchisee 'the exclusive right to sell and distribute Authorized Products to Authorized Outlets within [a defined territory].'" Pl. Amend. Compl. ¶25.
2. "The retailers believe that there is a connection between S-L and statutory franchisees such that S-L is responsible for the overall performance, quality, image, good will, and service provided by the franchisees." Id. at ¶33.
3. "Plaintiffs and members of the Class own (or owned) franchises within the meaning of the NJFPA because S-L granted them 'the exclusive right to sell and distribute Authorized Products

> to Authorized Outlets within the Territory.' In essence, the contract between franchisees and S-L is that each franchisee would step into S-L's shoes in a given geographic area for the purpose of conducting S-L's primary business of distributing Snyder's-Lance branded snack products." Id. at ¶71.

4. "The relationship between S-L and its franchisees established uniformity of product and control of its placement, marketing, price, and other marketing and distribution methods that causes retailer customers to believe they are dealing with S-L itself or that S-L endorses the franchisee's distribution and marketing of Snyders'-Lance products." Id. at ¶74.

5. "Plaintiff's customers believe that S-L vouches for the activities of Plaintiff. Customers who are dissatisfied with service or require additional products often call S-L directly to make a report, [*sic*] S-L then passes the report along to Plaintiff and members of the Class." Id. at ¶75.

The Court cannot plausibly interpret either these facts, or any others alleged in Plaintiff's Amended Class Action Complaint, to support that S-L granted a license. Plaintiff argues that he had a license because he "and other S-L franchisees [could] do something no one else [could] do—sell and distribute Snyder's-Lance products within a defined territory." Pl. Opp'n at 16. Yet this exclusive right to sell S-L's products in a defined geographic area does not confer a license. See Liberty Sales Associates, 816 F.Supp. at 1005 (finding no license where distributor agreement undisputedly gave vendor the exclusive right to sell the manufacturer's products in a defined geographic area). Plaintiff also unconvincingly asserts that the facts alleged in his complaint are sufficient because of "the extent of S-L's authorization (and requirement) to use Snyder's-Lance name." This argument fails, however, because courts have repeatedly stated that merely allowing a distributor to use the manufacturer's insignia does not in itself create a license. See Instructional Systems, 130 N.J. at 352; see also Atlantic City Coin & Slot Service Co., Inc. v. IGT, 14 F.Supp. 644, 664 (D.N.J. 1998). Otherwise, "any business selling a name brand

8

product would, under New Jersey law, necessarily be considered as holding a license." Instructional Systems, 130 N.J. at 352 (quoting Colt Indus. Inc. v. Fidelco Pump & Compressor Corp., 844 F.2d 117, 120 (3d Cir. 1988)).

Not only has Plaintiff failed to properly plead that he was permitted to use S-L's trademarks in a manner consistent with the NJFPA's license requirement, but he has not pled any facts that he actually used S-L's name. Plaintiff attempts to sidestep these deficiencies by analogizing to Instructional Systems, in which the New Jersey Supreme Court ruled that the parties' arrangement constituted a license despite the fact that the franchisee did not actually use the producer's name on its stationery, business cards, or on any business signs. See Instructional Systems, 130 N.J. at 353. Plaintiff's reliance on this case is misplaced, however, because the contract documents in question "expressly conferred the right to use the producer's name, trademark, and logo in its advertising, exhibits, trade shows, public relations materials, and manuals." See Id. In contrast, the distributor agreement between S-L and Plaintiff explicitly stated that Plaintiff could "make no use of SOH's name, or the trademarks or tradenames of any of the Authorized Products or Other Products for any reason whatsoever, except upon receiving SOH's prior written consent" See " Pl. Amend. Compl., Ex. B at 12.

In an attempt to revive his claim, Plaintiff asks the Court to overlook decades of precedent interpreting the NJFPA's requirements based on the 2010 Amendment's language that some courts have interpreted the statute's requirements more narrowly than intended. Plaintiff invokes this language to urge the Court to view prior precedent with a "skeptical eye." See Pl. Opp'n at 10. Even setting aside the fact that Plaintiff's opposition relies on precedent from the pre-Amendment period, Plaintiff's request is misguided. The 2010 Amendment did not change the license requirement for a potential franchisee to receive the NJFPA's protections.

Plaintiff has not pled any facts to support a license arrangement with S-L. He has not cited any provision of the distributor agreement granting him a license; nor has he pled any actual use constituting a license. Plaintiff's complaint is full of conclusory declarations that he is a "statutory franchisee" and is thus entitled to the protections of the NJFPA. Unfortunately, regardless of the number of times Plaintiff claims to have a "statutory franchise," this self-categorization is insufficient. See Innovative Tech. Distributors, LLC v. Oracle Am., Inc., 2011 WL 1584297, 7 (D.N.J. Apr. 25, 2011) (The "agreement states that it does not intend to create any relationship other than that of independent contractor, and specifically, that it does not create a franchise . . . Plaintiff's self-categorization as a franchise does not invalidate the terms of the validly bargained Sun-ITD Agreement, which explicitly states that ITD is not a franchise."). Accordingly, the Court finds that Plaintiff has not properly pled an NJFPA claim.[1]

### III. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED. An accompanying order shall issue today.

Dated: 12/19/2012                                     /s/ Robert B. Kugler
                                                       ROBERT B. KUGLER
                                                       United States District Judge

---

[1] As the Court has determined that Plaintiff has not pled a factual basis for his claim that he had a license, we decline to discuss the other statutory requirements. See Liberty Sales Associates, 816 F. Supp. at 1011 ("Because plaintiff failed to demonstrate a factual basis for its claim that Liberty had a license or place of business within the meaning of the Act, we need not consider whether the party's relationship created a community of interest.")