## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| JOSEPH A. MCPEAK, individually and on behalf of all similarly situated individuals,<br><br>              Plaintiff,<br><br>      v.<br><br>S-L DISTRIBUTION COMPANY, INC.,<br><br>              Defendant. | Civil No.: 12-cv-348-RBK-KMW<br><br>PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT |

Pursuant to Federal Rules of Civil Procedure 15 and this Court's December 19, 2012 Order (Dkt. 30), Plaintiff respectfully moves this Court to enter an order granting Plaintiff leave to file a Second Amended Consolidated Complaint in the form attached hereto as Exhibit 1. In support of his motion, Plaintiff states as follows:

1.      Federal Rule of Civil Procedure 15(a)(2) provides that, "a party may amend [its] pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

2.      The Supreme Court identified several factors that guide the application of this Rule in *Foman v. Davis:*

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In

> the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis,* 371 U.S. 178, 182 (1962); *see also Arthur v. Maersk, Inc.,* 434 F.3d 196, 204–05 (3d Cir. 2006) ("Leave to amend must generally be granted unless equitable considerations render it otherwise unjust.").

3.      The proposed amended complaint adequately pleads facts to satisfy the licensing requirement of the New Jersey Franchise Practices Act ("NJFPA"), N.J.S.A. § 56:10-1, *et seq.* (2010).

4.      When interpreting the term "license" as used by the NJFPA, "the Third Circuit and the New Jersey Supreme Court have consistently contemplated conduct beyond the confines of the written agreement." *Lithuanian Commerce Corp., Ltd. v. Sara Lee Hosiery*, 179 F.R.D. 450, 471 n.9 (D.N.J. 1998) (holding that a reasonable jury may find that a franchisor granted a license under the NJFPA even though a written license was never granted) *citing Cooper Distrib. Co., Inc. v. Amana Refrigeration, Inc.*, 63 F.3d 262, 272 (3d Cir. 1995) (holding that a "reasonable jury could have inferred the existence of a 'license' based on various aspects of the lengthy … relationship" between the parties); *Instructional Sys., Inc. v. Computer Curriculum Corp.*, 130 N.J. 324, 352, 614 A.2d 124, 138 (N.J. 1992))

(defining "license" in terms of "a reasonable belief on the part of the consuming public").

5.      The license requirement under the NJFPA is not determined by what a contract does or does not say but, rather, by how the parties' relationship was viewed by third parties.

6.      One of the most recent opinions interpreting the license requirement for the NJFPA is *Oracle America, Inc. v. Innovative Tech. Distributors LLC,* 5:11-CV-01043-LHK, 2012 WL 4122813 (N.D. Cal. Sept. 18, 2012). There, the court was presented with a contract similar to the one in this case, in which the putative franchisor's contract disclaimed the granting of a license. In that case, the court denied summary judgment: "This Court concludes that ITD has presented sufficient evidence to create a material factual dispute as to whether ITD had a franchise license. Significantly, ITD has presented evidence that at least one of its two primary customers, Alcatel–Lucent, 'believed that Sun vouched for the activities of ITD.'" *Oracle Am., Inc.*, 2012 WL 4122813 *12. The Court rejected the defendant's reliance on *Liberty Sales Assocs. Inc. v. Dow Corning Corp.* and similar cases because "[s]ignificantly, in these cases, there was no deposition testimony, customer affidavits, or other evidence showing that consumers believed the franchisor vouched for the … or that the franchisee was an extension of the franchisor." *Id.* at *13 (citations to the record omitted).

3

7.      In the instant case, Plaintiff's proposed Second Amended Complaint contains ample factual allegations that will allow a reasonable jury to find a reasonable belief on the part of the consuming public that there is a connection between S-L and Plaintiff by which the Defendant vouches for the activity of Plaintiff McPeak and other New Jersey S-L distributors.

8.      The proposed amended complaint contains the following <u>new</u> allegations that, along with the original allegations, support a plausible license under the NJFPA:

<u>Plaintiff used S-L trademarks and logos with S-L'</u>
*E.g. Lithuanian Commerce Corp., Ltd.*, 179 F.R.D. at 471 (holding that the use of "numerous promotional devices" was sufficient to enable a reasonable jury to find that there was a license).

- S-L provided Plaintiff and other distributors with business cards bearing the Snyder's of Hanover logo and slogan. (Ex. 1 ¶ 44.)

- S-L mandated the use of its invoices for all customers on a weekly basis. The invoices bear the Snyder's of Hanover name, address, phone numbers, web address, and state "Thank you for doing business with SNYDER'S OF HANOVER, INC." (Ex. 1 ¶ 42.)

- S-L provided Plaintiff and other New Jersey distributors with a telephone number and voice mailbox for customers to use. (Ex. 1 ¶ 44.)

4

<u>Customers perceived, and S-L encouraged the belief, that S-L and its distributors are "one and the same"</u>
*E.g. Cooper*, 63 F.3d at 273 (holding the perception among customers that the franchisor and franchisee share a "special relationship" or that they are "one and the same" is a critical factor in determining the existence of a franchise license).

- Plaintiff includes, as Exhibit E, an email from S-L's Area Sales Manager to a K-Mart employee, stating that "We agreed to place 1 cardboard hutch in each of your stores … We will bring the hutches by Sat., 2/25 … Snyder's salespeople will be in the store to service the display on a weekly basis …". Plaintiff and other New Jersey franchisees are the "Snyder's salespeople" referenced in the email. (Ex. 1 ¶ 43.)

- Plaintiff alleges that, as part of its effort to hold Plaintiff and other franchisees out to third parties as one and the same, S-L provided Plaintiff and other New Jersey franchisees with jackets, shirts, hats, and other apparel bearing S-L trademarks and logos to wear while they worked. Plaintiff includes a photo of one such item in the text of the proposed second amended complaint. (Ex. 1 ¶ 45.)

<u>Plaintiff's marketing services were integral to S-L's scheme</u>
*E.g. Cooper*, 63 F.3d at 273 (finding a license where a dealer's marketing activities "were an integral part of the sales process").

- Plaintiff alleges that S-L instructed him and other distributors to promote S-L's trademarks and branded products by publishing a "playbook" that included instructions to: "Keep selling space and features for Innovation" to

"Start getting our share of Small Convenience" and to "Out execute the competition on shelf and floor!!!" Ex. F. (Ex. 1 ¶ 37.)

- Additionally, Plaintiff has updated Exhibit B to the Amended Complaint to include a copy of S-L's Standard Operating Guidelines that are referenced in the Distributor Agreement. The guidelines instruct Plaintiff and other distributors in how to service customers and integrate their business into the S-L system.

- Plaintiff alleges that he and other franchisees were integral to S-L's marketing scheme; they were the ones who delivered marketing displays to stores, who displayed S-L products in stores, who requested floor or shelf space for advertisements, and were the face of the S-L to local customers. (Ex. 1 ¶ 38.)

Most or all of S-L's sales are accomplished through Plaintiff and other distributors
*E.g. Oracle Am., Inc.*, 2012 WL 4122813 *12 citing *Cooper*, 63 F.3d at 272 (finding a license where putative franchisor relied heavily on resellers like the plaintiff to market its products and where approximately 50 to 60 of the putative franchisor's sales were accomplished through resellers like the plaintiff).

- Plaintiff alleges that a vast majority (if not all) of S-L's sales are accomplished through wholesale resellers like Plaintiff. (Ex. 1 ¶ 23.)

Dated: January 4, 2013                    Respectfully submitted,

                                          s/ Michael M. Weinkowitz                    .
                                          Michael M. Weinkowitz, Esq.
                                          Charles E. Schaffer, *pro hac vice*
                                          LEVIN, FISHBEIN, SEDRAN & BERMAN
                                          510 Walnut Street, Suite 500
                                          Philadelphia, PA 19107
                                          (215) 592-1500 / (215) 592-4663 (fax)

                                          and

                                          Shawn J. Wanta, *pro hac vice*
                                          Baillon Thome Jozwiak & Wanta LLP
                                          222 South Ninth Street, Suite 2955
                                          Minneapolis, MN 55402
                                          (612) 252-3570 / (612) 252-3571 (fax)

                                          Attorneys for Plaintiff McPeak


MOTION RETURN DATE: February 4, 2013.