NOT FOR PUBLICATION                                    (Doc. No. 46)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____  :
                                   :
JOSEPH A. MCPEAK, individually and on :
behalf of all similarly situated individuals, :
                                   :
          Plaintiff,               :        Civil No. 12-348 (RBK/KMW)
                                   :
          v.                       :        **OPINION**
                                   :
S-L DISTRIBUTION COMPANY, INC.,    :
                                   :
          Defendant.               :
_____  :

**KUGLER**, United States District Judge:

This matter comes before the Court upon the motion of S-L Distribution Company, Inc.

("Defendant" or "S-L")[1] to dismiss and/or strike certain allegations in the Second Amended

Complaint of Joseph A. McPeak ("Plaintiff").  In his putative class action, Plaintiff alleges that

his Distributor Agreement with Defendant constituted a franchise under the meaning of the New

Jersey Franchise Practices Act ("NJFPA") and that Defendant violated the statute when it

unilaterally terminated the Agreement.  This Court previously granted Plaintiff's motion to file

his Second Amended Complaint.  Defendant now seeks to dismiss or strike Plaintiff's request for

injunctive and declaratory relief, his request for a jury trial, his demand for certain types of

damages, and his class allegations.  For the reasons expressed in this Opinion, the motion will be

**GRANTED IN PART, DENIED IN PART**.

_____

[1] S-L Distribution Company is the distribution division of Synder's-Lance, Incorporated, a maker of snack foods. Sec. Am. Compl. ¶¶ 1, 15.

## I.     BACKGROUND AND PROCEDURAL HISTORY

The factual allegations of this case have been set forth in the Court's Opinion dated

December 19, 2012 as follows:

On October 27, 2006, Plaintiff contracted with S-L (formerly known as SOH Distribution Company, Inc.) to obtain the exclusive right to sell and distribute certain products in a specified geographic region in Southern New Jersey.  See Amend. Compl. ¶¶ 1, 22.  The contract, entitled "Distributor Agreement," classified Plaintiff as an independent contractor and explicitly stated that "nothing herein shall be construed: (i) to be inconsistent with that relationship; (ii) as constituting Distributor as the franchisee, partner, agent, or employee of SOH."  Pl. Amend. Compl., Ex. B at 2.  The contract further contained a provision that Plaintiff, the distributor, "understands and acknowledges that this Agreement is not a franchise agreement.  This Agreement does not provide the Distributor with a franchise to distribute Authorized Products under a marketing plan or system prescribed by SOH."  Id. at 16.  The contract also prohibited Plaintiff from conducting "his business under SOH's name, or the trademarks or tradenames of any of the Authorized Products or Other Products."  Id. at 12.  Under the contract's terms, Plaintiff could not use S-L's "name, or the trademarks or tradenames of any of the Authorized Products or Other Products for any reason, whatsoever, except upon receiving SOH's prior written consent."  Id.

The contract required Plaintiff to, among other things, "use his best efforts" to sell certain products to authorized outlets and retail centers within the designated territory, comply with the standard operating guidelines, develop new accounts and additional shelf space for the respective products, and to "establish and to maintain the established, [sic] reputation and good will of the Authorized Products."  Id. at 4.  The contract also reserved S-L's right to authorize other persons from time to time to act as SOH's wholesaler in an area that included Plaintiff's territory.  Id. at 6.

For several years, Plaintiff invested capital, labor, and "specialized skills" into his business, leading to an approximate twenty-five percent increase in sales and a two hundred percent increase in the "market value" of his distributorship.  Pl. Opp'n. at 6.  Unfortunately, in November 2011, Plaintiff received notice that S-L was terminating the distributor agreement.  Id. at 5.  Plaintiff alleges that after news spread of S-L's termination of the distributor agreements, his business became "worthless" because "[n]o prospective purchaser would agree to purchase a business that would essentially disappear within days."  Pl. Amend. Compl. ¶¶ 51-54.  On January 3, 2012, S-L allegedly modified Plaintiff's "exclusive right to sell territory by reducing its size," leading to an almost fifty percent reduction in Plaintiff's sales volume.  Id. at ¶ 56.  Plaintiff and S-L executed a revised contract that required Plaintiff to use only advertising supplied or approved by S-L.  Pl. Amend. Compl., Ex. C at 14.  The provisions prohibiting Plaintiff's use of S-L's trademarks and explicitly repudiating that Plaintiff was a franchisee were also contained in the new agreement.  See Id. at 3, 14, 21.

2

On January 19, 2012, Plaintiff filed the instant lawsuit against S-L, asserting a claim on behalf of himself and other allegedly similarly situated individuals for declaratory, injunctive, and monetary relief.  Pl. Opp'n at 12; Pl. Amend. Compl. ¶ 10. In his Amended Class Action Complaint, Plaintiff alleges that S-L illegally terminated his franchise in violation of the NJFPA.  Pl. Amend. Compl. ¶¶ 66-88.  On March 8, 2012, Plaintiff sold his distributorship back to S-L.  Pl. Opp'n at 12.

McPeak v. S-L Distribution Co., Civ. No. 12-348, 2012 WL 6652764, at *1-2 (D.N.J. Dec. 19, 2012) (ECF Doc. No. 29).

Pursuant to its Opinion of December 19, 2012, this Court found that Plaintiff failed to plead a factual basis for his claim that he owned a franchise within the meaning of the NJFPA. In order to do so, he was required to plead facts sufficient to support a finding that S-L granted him a license to use its trade name and that a "community of interest" existed between the parties.  Plaintiff's allegations that he had the exclusive right to sell and distribute S-L products within a defined territory were insufficient to arrive at a finding that a license existed.  Id. at *5. Plaintiff's right to use the S-L name and insignia was similarly insufficient, as were the general allegations that some retail customers believed that S-L was responsible for the quality of Plaintiff's services, believed that they were dealing with S-L itself when dealing with Plaintiff, or that S-L vouched for the activities of Plaintiff.  Id. at *5-6.  The Court also rejected an argument by Defendant that Plaintiff had no standing to pursue his claims because he no longer owned his distributorship at the time the motion was decided.  Id. at *3.[2]

Although Defendant's motion to dismiss was granted, the Court indicated that Plaintiff could request leave to file a Second Amended Complaint.  On January 29, 2014, the Court granted Plaintiff's motion for leave to file his Second Amended Complaint.  See McPeak v. S-L

---

[2] The Court found, however, that because Plaintiff sold his route, he could not obtain injunctive or declaratory relief, but could only be awarded monetary relief.  McPeak v. S-L Distribution Co., Civ. No. 12-348, 2012 WL 6652764, at *3 (ECF Doc. No. 29).

Distribution Co., Civ. No. 12-348, 2014 WL 320074 (D.N.J. Jan. 29, 2014) (ECF Doc. No. 42).

The Court found that additional allegations set forth by Plaintiff, including an email by an

employee of Defendant that could be interpreted as referring to Plaintiff as a "Snyder's

salespe[rson]," and specific allegations related to resources provided to Plaintiff by Defendant,

and to the use of Defendant's trademark on Plaintiff's clothing and vehicle were sufficient to

plead the existence of a license.  Id. at *6-7.  This, coupled with Plaintiff's pleading that a

community of interest existed between the parties, and that he maintained warehouse space in

New Jersey, was sufficient to state a claim under the NJFPA.  After Plaintiff filed his Second

Amended Complaint, Defendant filed the instant motion.

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for failure

to state a claim upon which relief can be granted.  With a motion to dismiss, "'courts accept all

factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and

determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled

to relief.'"  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v.

Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).  In other words, a complaint survives a

motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to

relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

In making this determination, a court must engage in a two-part analysis.  Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009); Fowler, 578 F.3d at 210-11.  First, the court must separate

factual allegations from legal conclusions.  Iqbal, 556 U.S. at 678.  "Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.

Second, the court must determine whether the factual allegations are sufficient to show that the

plaintiff has a "plausible claim for relief."  Id. at 679.  Determining plausibility is a "context-specific task" that requires the court to "draw on its judicial experience and common sense."  Id.  A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible.  See id.

Alternatively, under Rule 12(f), a party may move to strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  A court has "considerable discretion" in deciding a Rule 12(f) motion.  Tonka Corp. v. Rose Art Indus., Inc., 836 F. Supp. 200, 217 (D.N.J. 1993).  However, motions to strike are disfavored and usually will be denied unless "the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues."  Eisai Co. v. Teva Pharm. USA, Inc., 629 F. Supp. 2d 416, 425 (D.N.J. 2009) (citing Garlanger v. Verbeke, 223 F. Supp. 2d 596, 609 (D.N.J. 2002)).  In connection with class allegations, Federal Rule of Civil Procedure 23(d)(1)(D) is an additional procedural vehicle, providing that a "court may issue orders that . . . require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly."  Fed. R. Civ. P. 23(d)(1)(D).

In a putative class action suit, a plaintiff is generally entitled to discover information relevant to Rule 23's class certification requirements.  Thus, a court should grant a motion to strike class allegations only if the inappropriateness of class treatment is evident from the face of the complaint and from incontrovertible facts.  See Landsman & Funk PC v. Skinder-Strauss Assocs., 640 F.3d 72, 93 n.30 (3d Cir. 2011) (holding that it is premature for a district court to decide class certification issues prior to discovery unless the "complaint itself demonstrates that the requirements for maintaining a class action cannot be met"); John v. Nat'l Sec. Fire and Cas.

Co., 501 F.3d 443, 445 (5th Cir. 2007) ("Where it is facially apparent from the pleadings that

there is no ascertainable class, a district court may dismiss the class allegation on the

pleadings"); Advanced Acupuncture Clinic, Inc. v. Allstate Ins. Co., Civ. No. 07-4925, 2008 WL

4056244, at *7 (D.N.J. Aug. 26, 2008) ("A defendant may move to strike class allegations prior

to discovery in rare cases where the complaint itself demonstrates that the requirements for

maintaining a class action cannot be met").

It is only when no amount of discovery or time will allow for plaintiffs to resolve

deficiencies in class definitions under Rule 23, that a motion to strike class allegations should be

granted.  Pilgrim v. Universal Health Card, LLC, 660 F.3d 943, 949 (6th Cir. 2011).  Otherwise,

in order for a district court to engage in the "rigorous analysis" required to determine if

certification is proper, an early motion to strike should be denied so that the court can "probe

behind the pleadings before coming to rest on the certification question," after discovery has

taken place.  Id. (quoting Gen. Tel. Co. v. Falcon, 457 U.S. 147, 160 (1982)).  A leading treatise

on class action litigation notes that although a "motion to strike class action allegations may

properly be filed before plaintiffs have filed a motion for class certification . . . [i]f the viability

of a class depends on factual matters that must be developed through discovery, a motion to

strike will be denied pending the full-blown certification motion." 1 Joseph M. McLaughlin,

McLaughlin on Class Actions § 3.4 (7th ed. 2010).

## III.   DISCUSSION

### A.      Requests for Injunctive and Declaratory Relief

This Court previously determined that Plaintiff "may only seek monetary relief."  Op. of

Dec. 19, 2012 at 6, ECF Doc. No. 29.  The basis for the Court's ruling was that Plaintiff had sold

his distributor route, and because he no longer maintained any interest in the Distributor

Agreement, he could not obtain declaratory or injunctive relief.  Id.  Although this Court permitted Plaintiff to file his Second Amended Complaint, the Court observes that his requests for such relief remain in that pleading.

Plaintiff's response is that at least one party who intends to seek permissive intervention in this litigation, as well as some of the putative class members that he hopes to represent, are entitled to injunctive or declaratory relief because they have not sold their franchises.  Pl.'s Opp'n at 27.  Plaintiff clearly cannot maintain allegations for relief that can only be afforded to persons who he hopes will become parties in the future.  Permissive intervention is governed by Rule 24, which requires that the court grant a motion before the intervention may occur.  Further, a named plaintiff in a putative class action must himself have standing to pursue injunctive relief to assert such claims on behalf of a putative class.  White v. First Am. Registry, 230 F.R.D. 365, 368 (S.D.N.Y. 2005).  Because Plaintiff admits that he cannot obtain injunctive relief, and he is presently the only plaintiff in this action, the Court must strike these allegations.

### B. Jury Trial

Defendant moves to strike Plaintiff's demand for a jury trial, citing language in the Distributor Agreement the parties entered into waiving the right to a jury trial.  Article 25 of the Distributor Agreement indicates:

> Waiver of Jury Trial. THE PARTIES HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER OF THEM MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY DISPUTE OR LITIGATION BASED ON THIS AGREEMENT OR ARISING OUT OF THIS AGREEMENT OR ANY ACTS, OMISSIONS, TRANSACTIONS OR COURSE OF DEALING HEREUNDER.

Sec. Am. Compl. Ex. B, Art. 25(d).

"In Suits at common law," the Seventh Amendment guarantees that "the right of trial by jury shall be preserved."  U.S. Const., amend VII.[3]  In diversity cases, "the right to a jury trial . . . is to be determined as a matter of federal law."  Simler v. Conner, 372 U.S. 221, 222 (1963).  However, "a private litigant may waive the right to a jury trial in a civil case."  Tracinda Corp. v. DaimlerChrysler AG, 502 F.3d 212, 222 (3d Cir. 2007).  In order to be deemed valid, such a waiver "must be made knowingly and voluntarily based on the facts of the case."  Id.  A waiver will be found to be knowing and voluntary by a court "when the facts show that (1) there was no gross disparity in bargaining power between the parties, (2) the parties are sophisticated business entities, (3) the parties had an opportunity to negotiate the contract terms, and (4) the waiver provision was conspicuous."  First Union Nat'l Bank v. United States, 164 F. Supp. 2d 660, 663 (E.D. Pa. 2001).

There is some uncertainty over who bears the burden of showing whether a waiver was made knowingly and voluntarily or not.  Some courts within the Third Circuit's jurisdiction have held that the party seeking to enforce the waiver bears this burden.  See Brown & Brown, Inc. v. Cola, Civ. No. 10-3898, 2011 WL 4380445, at *4 (E.D. Pa. Sept. 20, 2011); DaimlerChrysler Fin. Servs. Americas, LLC v. Woodbridge Dodge, Inc., Civ. No. 06-5225, 2009 WL 2152083, at *7 (D.N.J. July 14, 2009); First Union Nat'l Bank v. United States, 164 F. Supp. 2d 660, 663 (E.D. Pa. 2001).  Others have observed that the Third Circuit has not addressed this issue, and

---

[3] The parties have not briefed the issue of whether a suit under the NJFPA is a suit "at common law."  In determining whether the Seventh Amendment applies to a suit, courts typically consider (1) the nature of the action; and (2) the remedy sought.  Tull v. United States, 481 U.S. 412, 417 (1987).  The action at issue is compared to "18th-century actions brought in the courts of England prior to the merger of the courts of law and equity."  Id.  If the action resembles those brought in English law courts, it is tried by a jury, while if it is more analogous to 18th-century cases tried in courts of equity or admiralty, the Seventh Amendment does not require a jury trial.  Id.  Courts should also "examine the remedy sought and determine whether it is legal or equitable in nature."  Id. at 417-18.  In the case of statutory cases of action, an analogous connection to claims historically tried at law will suffice.  See Curtis v. Loether, 415 U.S. 189, 195-96 (1974).  This Court will not, on its own, engage in a lengthy analysis of whether the Seventh Amendment applies to claims under the NJFPA, and assumes, as the parties have, that it does.

"the other Circuit Courts are split on the issue."  Kennedy Funding, Inc. v. Lion's Gate Dev., LLC, Civ. No. 05-4741, 2006 WL 2038496, at *4 n.2 (D.N.J. July 19, 2006).  See also Nat'l Equip. Rental, Ltd. v. Hendrix, 565 F.2d 255, 258 (2d Cir. 1977) (finding that the burden is on the party seeking enforcement of the waiver); K.M.C. Co. v. Irving Trust Co., 757 F.2d 752, 758 (6th Cir. 1985) (finding that the party objecting to the jury waiver bears the burden of demonstrating that its own consent was not knowing and voluntary).  However, the Court is not aware of any district courts bound by Third Circuit precedent that have actually concluded, as the Sixth Circuit has, that the party seeking to void the waiver bears the burden of demonstrating that he did not knowingly and voluntarily waive his right to a jury.

Whether a jury waiver was entered into knowingly and voluntarily depends "on the facts of the case," which clearly may fall outside the pleadings of the underlying claim.  Tracinda Corp., 502 F.3d at 222.  Thus, although the parties here each set forth arguments as to why the knowing and voluntary factors weigh in their respective favor, courts that have applied these factors typically rely upon a more developed record than exists at the pleading stage.  For example, in finding whether a gross disparity existed in bargaining power, courts have looked to whether both parties were represented by attorneys at the time the contract was executed.  See Joseph Oat Holdings, Inc. v. RCM Digesters, Inc., Civ. No. 06-4449, 2007 WL 2473832, at *4 (D.N.J. Aug. 24, 2007); Allyn v. Western United Life Assur. Co., 347 F. Supp. 2d 1246, 1254 (M.D. Fla. 2004).  In determining the sophistication of the entities, courts have discussed factors such as the educational background and business experience of the parties.  See Oglesbee v. Indymac Fin. Servs., Inc., 675 F. Supp. 2d 1155, 1158 (S.D. Fla. 2009) (manager with four years of college education was sufficiently sophisticated to waive a jury trial); Cottman Transmission Sys. v. McEneany, Civ. No. 05-6768, 2007 WL 119956, at *3 (E.D. Pa. Jan. 4, 2007) (franchisee

of an auto repair business with prior business ownership experience had enough sophistication to understand a conspicuous jury waiver provision written in plain English); <u>Tara Woods Ltd. P'ship v. Fannie Mae</u>, Civ. No. 09-832, 2010 WL 1529459, at *1-3 (D. Colo. Apr. 1, 2010) (citing the "highly educated" background of a litigant with M.D. and M.B.A. degrees in finding that a jury waiver was knowing and voluntary). Here, there is no indication in the Second Amended Complaint as to the extent of Plaintiff's educational background. Further, although he evidently engaged in business on his own account after entering the Distributor Agreement, it is unclear what business experience he had at the time he signed the Agreement. It is also unclear whether he was represented by counsel at the time he entered into the Agreement with Defendant.

The lack of evidence germane to the relevant factors suggests that it is premature for the Court to rule on the issue of the jury waiver clause. This is especially so considering the lack of settled law as to the burden of proof, as the party with that burden would suffer the most from the lack of a developed record if this issue were to be decided now. Thus, the Court will deny Defendant's request to strike the jury demand without prejudice to Defendant's right to raise this issue again after the record is developed to include additional relevant facts.

**C. Demands for Consequential, Incidental, Special and Punitive Damages**

The Distributor Agreement also provided for a waiver of certain types of damages:

> <u>Limitation on Damages</u>. NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED IN THIS AGREEMENT, IN NO EVENT SHALL [S-L] BE LIABLE TO DISTRIBUTOR FOR CONSEQUENTIAL, INCIDENTAL, INDIRECT OR SPECIAL DAMAGES, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS AND PUNITIVE DAMAGES.

Sec. Am. Compl. Ex. B, Art. 25(g). Defendant seeks to strike Plaintiff's demand for such damages, on the basis that these damages have been contractually waived by Plaintiff. Plaintiff

10

indicates that he does not address this issue because he does not intend to seek any of these damages at trial.  Pl.'s Opp'n at 2 n.1.  Therefore, the motion to dismiss will be granted as to Plaintiff's request for Consequential, Incidental, Special and Punitive damages.

### D. Class Allegations

Defendant argues that striking the class action allegations is appropriate at the pleading stage because "the complaint itself demonstrates that the requirements for maintaining a class action cannot be met."  Def.'s Br. at 17 (citing Clark v. McDonald's Corp., 213 F.R.D. 198, 205 n.3 (D.N.J. 2003)).  In response, Plaintiff argues that Defendant's motion is premature because district courts frequently deny motions to strike class allegations before the plaintiff moves for class certification.  Further, Plaintiff asserts that he should be entitled to discovery before the Court rules on the merits of the class allegations.

It is true that motions to strike class allegations are only granted "in rare cases."  Goode v. Lexisnexis Risk & Info. Analytics Grp., Inc., 284 F.R.D. 238, 246 (E.D. Pa. 2012).  Normally, a putative class representative is afforded an opportunity to engage in discovery before testing the merits of his class claims.  See Ehrhart v. Synthes (USA), Civ. No. 07-1237, 2007 WL 4591276, at *4 (D.N.J. Dec. 28, 2007) (denying motion to strike class allegations as premature because it would deny the plaintiffs the ability to fully develop their case through discovery); Andrews v. Home Depot U.S.A., Inc., Civ. No. 03-5200, 2005 WL 1490474 (D.N.J. June 23, 2005) (denying motion to strike class allegations as premature because the court could not conclude beyond doubt that no set of facts could support class treatment).  However, class allegations have been dismissed or stricken when it is clear from the face of the complaint that the requirements for maintaining a class action cannot be met.  See, e.g., Barabin v. Aramark Corp., 210 F.R.D. 152, 162 (E.D. Pa. 2002), aff'd, 2003 WL 355417 (3d Cir. Jan. 24, 2003)

(granting motion to strike class allegations where it was apparent from the complaint that Rule 23 could not be satisfied).  Thus, the Court does not subscribe to Plaintiff's suggestion that courts should never grant motions to strike class allegations, or that the timing of this motion is dispositive on its own.

The Court must determine whether it is clear from the face of the operative complaint that plaintiff cannot meet Rule 23's requirements for a class action.  Rule 23(a) provides that class certification is proper if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In addition, Rule 23 mandates that parties seeking class certification satisfy the requirements of one of the three subsections in Rule 23(b).  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614-15 (1997).  To satisfy Rule 23(b)(3), which is applicable here,[4] a party seeking certification must meet two requirements.  Id.  First, common questions must "predominate over any questions affecting only individual members."  Id.  Second, class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy."  Id.

---

[4] Plaintiff does not indicate in his brief under which section of 23(b) he will proceed, but the court conducts its analysis under Rule 23(b)(3).  Rule 23(b)(1) governs classes "in which separate actions by or against individual class members would risk establishing incompatible standards of conduct for the party opposing the class," or those that would affect the interests of nonparty class members.  Amchem Prods, Inc. v. Windsor, 521 U.S. 591, 614 (1997) (citations omitted).  Rule 23(b)(2) governs class actions seeking injunctive or declaratory relief.  Id.  It is not apparent to the Court that Plaintiff could represent a class under Rule 23(b)(1) or 23(b)(2).

The Court will address the provisions of Rule 23 that are contested by Defendant, which are that Plaintiff's NJFPA claim is unsuitable for class treatment because: (1) it lacks "commonality" and fails the predominance requirement; (2) the class is not ascertainable through objective criteria; and (3) Plaintiff's proposed class includes persons without Article III standing.

1.   Commonality / Predominance

Where an action proceeds under Rule 23(b)(3), as here, "the commonality requirement 'is subsumed by the predominance requirement'" set forth in Rule 23(b)(3).  <u>Danvers Motor Co. v. Ford Motor Co.</u>, 543 F.3d 141, 148 (3d Cir. 2008) (quoting <u>Amchem Prods.</u>, 521 U.S. at 627).

To certify a class under Rule 23(b)(3), "questions of law or fact common to class members" must "predominate over any questions affecting only individual members."  Rule 23(b)(3)'s predominance requirement is "far more demanding" than the commonality requirement set forth in Rule 23(a).  <u>Amchem Prods.</u>, 521 U.S. at 623-24.  An inquiry into predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  <u>Id.</u> at 623. Further, the inquiry into predominance assesses whether a class action "would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated."  <u>Sullivan v. DB Inv., Inc.</u>, 667 F.3d 273, 297 (3d Cir. 2011) (quoting Fed. R. Civ. P. 23(b)(3) advisory committee's note to 1966 amendment).

Defendant argues that Plaintiff's claim fails the commonality and predominance test on its face.  A claim under the NJFPA requires a plaintiff to prove that he or she meets the statutory definition of a franchisee, which was disclaimed by the contractual agreement between Defendant and each potential class member.  Thus, Defendant argues, each individual member of the putative class will have to prove that he or she owned a franchise through evidence individual to that person.  Def.'s Br. at 21.  The Court has already determined that merely being a party to

S-L's Distributor Agreement is insufficient to establish the existence of a franchise under the meaning of the NJFPA.  See Opinion of December 19, 2012 at 8-10 (ECF Doc. No. 29).  Under New Jersey law, a franchisor must grant the franchisee "a license to use a trade name, trade mark, service mark, or related characteristics," and the parties must also have an arrangement "in which there is a community of interest in the marketing of goods or services at wholesale, retail, by lease agreement, or otherwise."  N.J.S.A. 56:10-3(a).  In turn, the existence of a license can be demonstrated when the alleged franchisor "vouches, as it were, for the activity" of the alleged franchisee.  Instructional Sys., Inc. v. Computer Curriculum Corp., 130 N.J. 324, 352 (1992).

Defendant further points out that Plaintiff was only able to state a claim under the NJFPA by introducing allegations that Defendant provided him with clothing and business cards bearing its trademarks and logos, maintained telephone numbers and voice mailboxes on his behalf, permitted the display of S-L trademarks on his vehicle at Defendant's expense, and referred to Plaintiff and other distributors as "Snyder's Salespeople."  See Opinion of January 29, 2014 at 10-11 (ECF Doc. No. 42).  These facts were deemed sufficient to allege that Defendant "vouched" for his activities.

It is true that some of Plaintiff's allegations related to the license requirement were individual to himself.  However, it does not automatically follow that no facts could possibly be developed through discovery that could satisfy the license requirement on a classwide basis.  The Third Circuit has specifically cautioned against striking class allegations prior to discovery on the basis of lack of predominance, because "[p]articularly when a court considers predominance, it may have to venture into the territory of a claim's merits and evaluate the nature of the evidence."  Landsman & Funk PC v. Skinder-Strauss Assocs., 640 F.3d 72, 93 (3d Cir. 2011) (citing In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 310-11 (3d Cir. 2008)).  The

14

Third Circuit further observed that "[i]n most cases, some level of discovery is essential to such an evaluation."  Id.  Landsman involved claims that the defendants sent fax advertisements to the plaintiffs without their consent, in violation of the Telephone Consumer Protection Act.  Id. at 73.  The district court struck class allegations, finding that there were too many "crucial factual determinations to be made with respect to claims and defenses that will vary from party to party."  Id. at 93.  In reversing the district court, the Third Circuit found that "delving into the propriety of class certification was the wrong focus at that early stage of the proceeding."  Id. at 92.  Discovery was necessary to determine the "factual issues regarding class members' business relationships with defendants."  Id. at 93.

This Court will decline to follow the path that the Third Circuit cautioned against in Landsman.  Plaintiff should be entitled to develop information as to the business relationships between Defendant and its New Jersey distributors in an attempt to show through common proof that it had a franchise relationship with each of these potential class members under the statutory definition.  In order to certify a class, Plaintiff will have to show that every S-L distributor possessed a franchise as defined by New Jersey law "through evidence common to the class, as opposed to individualized evidence."  In re Hydrogen Peroxide, 552 F.3d at 312.  While it may be difficult for Plaintiff to establish each necessary element through such common evidence, the Court cannot conclude from the complaint that no such evidence could ever be produced.

2.  Ascertainability

Before certifying a class, a court must determine whether it is objectively ascertainable.  Carrera v. Bayer Corp., 727 F.3d 300, 305 (3d Cir. 2013).  Classes are not ascertainable when "class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials.'"  Id. at 303-04 (citing Marcus v BMW of N. Am., LLC, 687 F.3d 583, 593 (3d Cir.

2012)).  Rather, "the class must be currently and readily ascertainable based on objective criteria."  Marcus, 687 F.3d at 593.

Ascertainability must be established "so that it will be clear later on whose rights are merged into the judgment," as otherwise, "satellite litigation will be invited over who was in the class in the first place."  Marcus, 687 F.3d at 593 (internal citations omitted).  Thus, testing a putative class action for ascertainability "serves several important objectives:" (1) it eliminates administrative burdens that would run counter to the intended efficiency of class actions in general; (2) it serves to protect absent class members by ensuring that "the best notice practicable" can be provided to class members; and (3) it protects defendants by clearly identifying those who will be bound by the final judgment.  Id.

Plaintiff defines the class as "all individuals or entities that operated out of a warehouse in the State of New Jersey who were party to a Distributor Agreement with Snyder's-Lance Distribution, Inc. on November 1, 2011."  Sec. Am. Compl. ¶ 66.  The Court observes nothing on the face of the operative complaint that would allow it to conclude that all persons who meet this definition could not be ascertained through objective methods, such as through Defendant's records of its Distributor Agreements.  Defendant's argument that Plaintiff cannot ascertain all class members relates, not to Plaintiff's actual proposed class definition, but to the additional factors that Defendant believes are necessary in order to advance a viable NJFPA claim.   Def.'s Br. at 32.  Defendant argues that "each potential class member would . . . need to present proof as to each element required to establish a franchise under the NJFPA."  Id.  The Court observes no substantive difference between this objection and the one discussed in the previous section in connection with predominance.  Defendant's expected lack of proof as to each element of an NJFPA claim would be more properly addressed through a summary judgment motion, and any

16

lack of common evidence should be addressed at the class certification stage under the analysis

related to commonality and predominance, as discussed in the previous section.

    3.   Article III Standing

    The threshold question in every federal case is determining whether the court can

entertain the suit.  Warth v. Seldin, 422 U.S. 490, 498 (1975)).  Whether the court can entertain

the suit depends on Article III standing, or "whether the plaintiff has made out a 'case or

controversy' between himself and the defendant within the meaning of Article III."  Id.  In order

to have Article III standing, a plaintiff must "have suffered an 'injury in fact' that is 'distinct and

palpable'; the injury must be fairly traceable to the challenged action; and the injury must be

likely redressable by a favorable decision."  Denney v. Deutsche Bank AG, 443 F.3d 253, 263

(2d Cir. 2006) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–561 (1992)).  In a

class action, each member of the class need not submit evidence of personal standing.  Id.

However, "no class may be certified that contains members lacking Article III standing."  Id. at

264.

    Defendant's argument against standing is essentially the same one that it already

advanced in connection with predominance and ascertainability.  Defendant argues that "absent

from the . . . proposed class definition is any reference to purported facts to establish that there

was, at a minimum, a license and a community of interest sufficient to establish the existence of

a franchise for all purported class members."  Def.'s Br. at 33.  While Defendant characterizes

this as a standing argument, Defendant actually appears to challenge whether the injuries

allegedly suffered by putative class members are redressable under New Jersey franchise law.

The Court will thus not revisit this issue under the framework of a standing analysis.  It is true

that "a named plaintiff cannot represent a class of persons who lack the ability to bring a suit

themselves." Avritt v. Reliastar Life Ins. Co., 615 F.3d 1023, 1034 (8th Cir. 2010).  However, a determination as to whether the class definition encompasses persons who have no viable cause of action should be made with the benefit of a full record.  Defendant has not cited any case where a court struck class allegations at the pleading stage on the basis of lack of standing by potential absent class members.  If all persons with a Distributor Agreement with S-L and warehouse space in New Jersey were franchisees under the meaning of the NJFPA, then they would each appear to have standing.  Whether or not this is the case will turn upon whether Plaintiff can produce adequate relevant evidence, common to the class.  As the Court has discussed, Plaintiff is entitled to seek to develop such evidence through discovery.  Accordingly, Defendant's motion to strike the class action allegations must be denied as premature.

### E.  Rent Allegations

Finally, Defendant moves to strike an allegation in the Second Amended Complaint that Plaintiff and members of the putative class "pay a $35 per week fee to S-L for, inter alia, warehouse rent."  Sec. Am. Compl. ¶ 87.[5]  Defendant argues that this allegation is contradicted by an exhibit attached to the Second Amended Complaint, which is a copy of Defendant's "Standard Operating Guidelines."  That document provides for a $35 "Weekly Administrative Service Charge for services, supplies and use of computer system."  Standard Operating Guidelines at 2, Sec. Am. Compl. Ex. B.  Because the document does not indicate that any part of the $35 is for "rent," Defendant believes the allegation should be stricken from the pleading.

The Court observes first that Rule 12(f) only allows a Court to strike material that is "redundant, immaterial, impertinent, or scandalous matter."  Defendant cites no authority that

---

[5] This allegation appears to be relevant because the NJFPA only applies to a franchise "which contemplates or requires the franchisee to establish or maintain a place of business within the State of New Jersey."  N.J.S.A. 56:10-4.

material may be stricken because it is incorrect.  Of course, Plaintiff will have to demonstrate through admissible evidence that he paid rent if he wishes to establish this to defeat a motion for summary judgment or to satisfy an element of his claim.  However, disputed issues of fact are not addressed by courts through motions to strike.  Eisai Co. v. Teva Pharm. USA, Inc., 629 F. Supp. 2d 416, 425 (D.N.J. 2009).  Courts do not grant motions to strike individual allegations from a pleading "unless the moving party shows that 'the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues.'"  Id. (citing Garlanger v. Verbeke, 223 F. Supp. 2d 596, 609 (D.N.J. 2002)).  Defendant cites no law where a court has granted a similar motion to strike, and this Court finds that it would not be proper to make conclusions about the evidence supporting Plaintiff's allegations at this stage.

Further, Plaintiff did not plead that the Standard Operating Guidelines provided for the payment of rent.  He merely pleaded that he paid $35 per week, and that the $35 in part, constituted warehouse rent.  Sec. Am. Compl. ¶ 87.  Thus, the document that Defendant points to that appears to indicate that Plaintiff was required to pay $35 for non-rent purposes does not directly disprove his allegation.  The Court will deny the motion to strike Plaintiff's allegation referring to rent.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion will be **GRANTED IN PART, DENIED IN PART**.  The motion will be granted as to Plaintiff's demands for declaratory and injunctive relief, and these demands will be stricken from the Second Amended Complaint.  Plaintiff's demands for consequential, incidental, special and punitive damages will be dismissed.  The motion will be denied as to Plaintiff's class action allegations and allegations pertaining to rent,

and denied without prejudice as to Plaintiff's jury demand.  An accompanying Order shall issue

today.


Dated:  9/5/2014                              s/ Robert B. Kugler
                                                          ROBERT B. KUGLER
                                                          United States District Judge